IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTOPHER L. SCHARKLET, SR.                                            PLAINTIFF

v.                                            CIVIL ACTION NO. 1:22-CV-193-SA-DAS

CASE HEALTHCARE SOLUTIONS, INC.                                   DEFENDANTS

ORDER AND MEMORANDUM OPINION

On December 12, 2022, Christopher L. Scharklet, Sr. initiated this civil action by filing his Complaint [1] against Case Healthcare Solutions, Inc. ("Case"). Before the Court is Case's Motion to Dismiss for Failure to State a Claim [5]. The Motion [5] has been fully briefed and is ripe for review.

*Relevant Factual and Procedural Background*

Scharklet's Complaint [1] alleges violations of the Americans with Disabilities Act of 1990, ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

According to his Complaint [1], Scharklet is a disabled veteran. He retired from the U.S. Army in 2014 with a total disability determination. He is disabled due to injuries to his cervical and lumbar spine, which result in radiculopathy in both shoulders and lower extremities; carpal tunnel of the left wrist; strain of the right wrist; surgical scars to the spine, as well as other scarring; and major depressive disorder. His chronic pain syndrome and major depressive disorder require daily treatments.

Scharklet alleges that he worked part-time as a General Clerk II at the U.S. Army Recruit Command Center ("USAREC") in Tupelo, Mississippi from November 24, 2014 until he was terminated on August 24, 2021. Workers at USAREC are employed by federal contractors that provide administrative services to USAREC facilities. Scharklet alleges that over the course of his

employment as a General Clerk II, he worked for several different contractors but always performed the same duties. The contractors relevant to this case are Choctaw Defense Services ("Choctaw") and Case. Case took over the Recruiter Administrative Services Support ("RASS") Contract from Choctaw on June 1, 2021.

According to the Complaint [1], although the General Clerk II position generally required six hours of work per day for a total of 30 hours per week, while employed with Choctaw, Scharklet worked four to four and one-half hours per day. Scharklet avers that his ability to work reduced hours was a result of a written exchange between Choctaw and USAREC. Specifically, during the years that Choctaw held the contract, Choctaw received a letter of concern from USAREC regarding existing work hour adjustments. In response to USAREC's letter, Choctaw submitted accommodation requests for two employees, one of which was Scharklet. USAREC's Contracting Officer ("KO") responded to Choctaw's request with a "Revocation of Letter of Concern as a result of the approval of the disability accommodation requests." [1] at p. 5. In light of USAREC's response, Scharklet was allowed to work reduced hours. He did so through the duration of time that Choctaw held the contract.

The remainder of the Complaint [1] describes a detailed series of emails between Case and the U.S. Army leading up to Scharklet's termination. The email exchange was originally initiated for the purpose of requesting telework exceptions for employees with medical conditions. The telework requests did not include Scharklet because he did not request telework.

In short, the U.S. Army denied Case's telework requests, and the conversation stemming from that denial referred to the telework requests as requests for ADA accommodations. On June 15, 2021, Melody Price with the U.S. Army emailed Case President Harriet Jackson-Soumah and

asserted that they were discussing two different issues: telework exceptions and ADA accommodations. With respect to ADA accommodations, Price stated the following:

> I suggest you work with your attorney to make sure your [sic] in compliance with the rules and regulations for those asking for these accommodations. What I need from you are the following items for those who are approved to work (1) the site they are working, (2) hours they are working if not a full 30 hours, (3) if they are not working a full 30 hours, what are your plans to backfill the position. I have no knowledge of the prior contract that allowed employees to have accommodations based on their needs. At this point, this is a request for information so I can find out the next steps.

*Id*. at p. 8.

Jackson-Soumah forwarded Price's email to Case Program Manager Chris Voldarski[1] and asked him for information on previous ADA approvals. Voldarski's June 16 response explained the above-referenced exchange between USAREC and Choctaw that ended in the KO sending a Revocation of Letter of Concern. Voldarski's email attached the Revocation of Letter of Concern and further stated that "[w]e tracked hours worked for the remainder of the [Choctaw] contract. At the time, there were no deductions for LWPO [(Leave Without Pay)]. The employee worked about 4 hours a day. Sometimes a little more, sometimes a little less." *Id*. at 9.

Several days earlier, on June 13, 2021, Case Assistant Program Manager William Culpepper emailed Scharklet and requested a doctor's note or letter documenting his conditions that required ADA accommodations. In response, Scharklet sent Culpepper a VA Disability Rating Extract. Later, on August 11, 2021, Scharklet sent Culpepper a letter from one of his treating doctors explaining his disabilities, the treatments, and why he may need to leave work early.[2]

---

[1] For context, the Court notes that Scharklet reported to Voldarski and Assistant Program Manager William Culpepper while employed with Case. Both Voldarski and Culpepper worked at USAREC (presumably for Choctaw) before Case was awarded the contract. Scharklet reported to Voldarski under the prior contract as well.

[2] The Complaint [1] alleges elsewhere that Scharklet went home for treatment because it required him to partially undress. *See* [1] at p. 3.

Scharklet alleges that Case did not send USAREC the information Price requested in her June 15 email. Scharklet further asserts that Case never asked him to submit a new accommodation request. According to the Complaint [1], Scharklet believed that Case would have his accommodation approval from the Choctaw contract and that the previous accommodations would be in place for the Case contract as well.[3]

The Complaint [1] alleges that "[i]n July or early August, Case was not meeting the requirements of its contract with USAREC" and was at risk of having its contract terminated. *Id*. at p. 10. Though not explicitly stated, based on the remainder of the Complaint [1], the Court assumes that this was at least in part due to Scharklet working less than 30 hours per week.

At this point, Jackson-Soumah was communicating with JoDeen Cuffe, U.S. Army Contracting Command and KO, regarding Case's shortcomings under the contract. On August 9, 2021, Jackson-Soumah emailed Cuffe requests for alternative work schedules "to work outside of contract hours," one of which was for an employee at Tupelo USAREC. *Id*. The Complaint [1] does not explicitly state that this was a request for Scharklet to work reduced hours, but the Court assumes that it was due to the conversations described below.

On August 19, 2021, Cuffe emailed Jackson-Soumah to follow up on a conversation they had regarding "opening 'dialogue with the employee in question,' to determine if 'terms for remaining on duty' were viable." *Id*. On the same day, Culpepper emailed Case's Vice President Michelle Peebles confirming that he advised Scharklet of the following:

> [I] informed him that if he continued to miss 1.5 hours everyday that he would be terminated. I told him that ADA is not in this contract and the Government will not allow him to continue to miss. When I asked him if he would be able to work the full 30 hours and use sick

---

[3] Earlier in the Complaint [1], Scharklet alleges that, during the transition period from Choctaw to Case, he asked Voldarski "about the accommodations in place for [him] under Choctaw and whether [he] needed to do anything regarding his accommodations during the transition to Case." [1] at p. 5. However, the Complaint [1] provides no further information about the result of his inquiry.

> time he has earned he simply stated that he wanted this information in writing. I told him that the writing will be a termination letter if he does not work the required hours[.]

*Id*. at p. 10-11.

In response, Jackson-Soumah stated: "We gave him the verbal courtesy, if he misses any more time from work he will be terminated." *Id*. at p. 11.

On August 24, 2021, Culpepper emailed Scharklet and advised that if he wanted to stay employed at Case, he would be required to work more hours. Scharklet responded to Culpepper's email with disbelief that Case would not support a disabled veteran and the ADA accommodations that he had been receiving for the previous seven years. To his email, Scharklet attached the letter from his doctor and statements from past Commanding Officers stating that he performed all tasks required of him while working a reduced schedule.[4] Scharklet asked that the attachments be considered before he was terminated. Approximately half an hour later, Culpepper responded to Scharklet and terminated him effective "1445 8/24/21"—fifteen minutes before the email was sent. *Id*. at p. 12.

Scharklet alleges that Case terminated him "for his disabilities without regard to whether [he] could perform the essential functions of his job." *Id*. at 14. Scharklet highlights that his monthly performance evaluations rated his performance as "Very Good" for January 2021 through July 2021. He asserts that Case did not ask about his essential job functions, provide him with essential job functions, engage in the interactive process, or consider the documentation attached to his August 24 email when it terminated him.

---

[4] The Complaint [1] includes some of the statements from the past Commanding Officers. In short, Captain Daniel A. Ables stated that Scharklet's reduced hours had no impact on the mission or effectiveness of the office. *See* [1] at p. 13. Captain Joshua L. McFarland stated that Scharklet was "easily the most effective Unit Administrator in the Baton Rouge Battalion." *Id*.

Before the Court is Case's Motion to Dismiss [5], primarily asserting that Scharklet's requested accommodation is not reasonable as a matter of law.

*Legal Standard*

The purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of the statement for relief. *Wheeler v. Williams*, 2018 WL 6204444, at *3 (N.D. Miss. Nov. 27, 2018) (citing *Murray v. Amoco Oil Co.*, 539 F.2d 1385 (5th Cir. 1976)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

A legally sufficient complaint need not contain detailed factual allegations, but it must set forth more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. "If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed." *Wheeler*, 2018 WL 6204444 at *3 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).

*Analysis and Discussion*

As noted above, the Complaint [1] alleges that Case violated the ADA and the Rehabilitation Act. However, after a careful review of Scharklet's Complaint [1] and the record as a whole, the Court is unsure of the particular claims Scharklet intends to advance.

As an initial matter, the Complaint [1] does not specifically set forth a discrete claim or claims (i.e. disability discrimination, retaliation, failure to accommodate, etc.). The Complaint [1]

contains relatively detailed factual allegations, but those allegations could be construed as setting forth different discrete claims because there is significant overlap in the analysis applicable to claims brought under the ADA. For example, the Complaint's [1] allegation that Case failed to engage in an "interactive process" could be relevant to a disability-discrimination claim or a failure-to-accommodate claim. *See E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 703 n. 6 (5th Cir. 2014) (while a failure-to-accommodate claim is distinct from a discriminatory-termination claim, the question of whether an employer engaged in the interactive process is relevant to the qualification element of either analysis). Furthermore, the Complaint [1] states that Case "terminated Mr. Scharklet for his disabilities" and that Scharklet had a "right to be free from discriminatory and retaliatory motive for [his] request for accommodation for his disability." [1] at p. 14. That terminology suggests to the Court that Scharklet brings *both* disability discrimination and retaliation claims. Perhaps the Court could proceed on the assumption that Scharklet intends to bring both claims, but the briefs related to the instant Motion [5] further confuse the issue.

Case's Motion [5] construes Scharklet's Complaint [1] as bringing a disability-discrimination claim under the ADA. Case asserts that Scharklet relies on circumstantial evidence to bring a disability-discrimination claim and therefore analyzes the claim under the *McDonnell Douglas* framework.

In response, Scharklet's Memorandum [13] includes a heading that reads "PLAINTIFF'S COMPLAINT STATES A CLAIM FOR DISABILITY DISCRIMINATION AND RETALIATION UNDER ADAAA."[5] [13] at p. 11. Under that heading, Scharklet sets forth the elements of a failure-to-accommodate claim and spends much of his brief analyzing those elements. Further confusing the issue, Scharklet asserts that the *McDonnell Douglas* standard

---

[5] For clarity, the Court notes that Sharklet refers to the ADA, as amended by the ADA Amendments Act of 2008, as the ADAAA.

applies at the summary judgment stage, rather than the motion to dismiss stage—an assertion that would be relevant if Scharklet was bringing a disability-discrimination claim.[6]

In its Reply [20], Case again construes Scharklet's claim as a disability-discrimination claim, despite the fact that Scharklet's Response [12] analyzes the elements of a failure-to-accommodate claim. However, Case's Reply [20] demonstrates some confusion regarding Scharklet's claims as well. Namely, Case points out the heading in Scharklet's Memorandum [13] that references a retaliation claim. Case "assumes that this reference is a typographical or transcription error, because the Complaint does not raise an ADA retaliation cause of action." [20] at p. 12. Nonetheless, Case admits that Scharklet's Complaint [1] mentions retaliation one time, but it asserts that the claim must fail "*[t]o the extent Plaintiff intended* those references in the Complaint and Opposition to advance an ADA retaliation claim." [20] at p. 13 (emphasis added). In other words, Case also appears to be unsure about whether Scharklet intended to bring a retaliation claim. And overall, the parties' briefing demonstrates that they do not share an understanding of the claims Scharklet brings.

The Complaint's [1] failure to set forth discrete claims, as well as the Response's [12] references to several different claims, leaves the Court in the precarious position of having to guess what claims Scharklet attempts to bring. The Court finds that it is not appropriate to proceed on

---

[6] Scharklet is correct that an employment discrimination plaintiff "need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cicalese v. Uni. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)) (finding that 12(b)(6) pleading standard, rather than *McDonnell Douglas* evidentiary standard, applies at the motion to dismiss stage in the context of a Title VII case); *see also Lowe v. Am. Eurocopter, LLC*, 2010 WL 5232523, at *8 (N.D. Miss. Dec. 16, 2010) (finding the same in the context of a disability-discrimination claim). However, Scharklet makes this assertion in a Memorandum [13] that otherwise analyzes a failure-to-accommodate claim—a claim to which *McDonnell Douglas* does not apply at any stage. *See Thompson v. Microsoft Corp.*, 2 F.4th 460, 467, 470 (5th Cir. 2021) (applying *McDonnell Douglas* to disability-discrimination claim but not to failure-to-accommodate claim at the summary judgment stage). This leaves the Court unsure of whether Scharklet attempts to advance both claims or misunderstands the claims to be the one and the same.

assumption. Further, the Court finds that the Complaint [1] does not contain sufficient information to allow a responsive pleading to be framed, nor to allow the Court to rule on the present Motion to Dismiss [5]. As such, the proper remedy is a motion for a more definite statement under Rule 12(e), or an order allowing the plaintiff to amend. *See Clinton v. Johnson*, 2014 WL 575295, at *2 (S.D. Miss. Feb, 11 2014) (citing *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 163 (5th Cir. 1999)) (although facts alleged in counterclaim appeared to bring two particular claims, court ordered defendant to amend counterclaim where it did not set forth specific causes of action); *see also White v. City of Grenada, Miss.*, 2021 WL 4449276, at *5 (N.D. Miss. Sept. 28, 2021) (court declined to proceed on assumptions about plaintiff's claims and ordered plaintiff to amend complaint where factual allegations were not adequately linked to causes of action); *Sudduth v. Lowndes Cnty., Miss.*, 2019 WL 982961, at *4 (N.D. Miss. Feb, 28, 2019) (same). Although Case has not requested that Scharklet be required to provide a more definite statement, the Court has authority to order the same *sua sponte*. *See White*, 2021 WL 4449276 at *5 (*sua sponte* ordering repleading). The Court finds that doing so is appropriate here. Scharklet shall amend his Complaint [1] and set forth his claims with more specificity.

*Conclusion*

For the reasons set forth above, Scharklet is hereby ORDERED to file an Amended Complaint within fourteen (14) days of today's date. The Amended Complaint should address the deficiencies articulated above. Should Scharklet fail to file an Amended Complaint within fourteen (14) days, the Court will dismiss his claims without further notice for failure to prosecute.

Case's Motion [5] is DENIED *without prejudice* as MOOT. If it so chooses, Case may refile its Motion to Dismiss once Scharklet files his Amended Complaint.

SO ORDERED, this the 11th day of July, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE