IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
Aberdeen Division

| | |
|---|---|
| CHRISTOPHER L. SCHARKLET, SR. | |
| Plaintiff | |
| v. | Case No.: 1:22-cv-193-SA-DAS |
| CASE HEALTHCARE SOLUTIONS, INC. | |
| Defendant | |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Defendant, Case Healthcare Solutions, Inc. ("Defendant" or "Case"), by counsel, submits this memorandum brief in support of its motion to dismiss ("Motion") Plaintiff Christopher L. Scharklet, Sr.'s ("Scharklet" or "Plaintiff") First Amended Complaint ("Amended Complaint"), or, in the alternative, for a more definite statement, and respectfully requests that this Court grant the Motion. As grounds therefore, Defendant states as follows:

**I.  INTRODUCTION**

This dispute arises from Plaintiff's brief employment with Defendant in Tupelo, Mississippi pursuant to Defendant's contract with the U.S. Army (the "Army" or the "Government"). After Plaintiff's termination for failure to perform essential job functions as a General Clerk II at the U.S. Army Recruiting Command center, Plaintiff initiated this lawsuit claiming that Defendant violated the ADA with respect to its treatment of Plaintiff. Defendant filed a motion to dismiss. The Court ordered Plaintiff to file a more definite statement and denied the motion as moot, noting that it was "unsure of the particular claims Scharklet intends to advance

. . ." because the Complaint did not "specifically set forth a discrete claim or claims . . . ." ECF No. 23 at 6-7. The Court offered Plaintiff the opportunity to file an amended complaint to cure the deficiencies in his initial pleading. But Plaintiff's Amended Complaint (ECF No. 24) does nothing to improve on the initial filing.

It is evident that Plaintiff is making claims under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (the "ADAAA"), and the Rehabilitation Act of 1973 (the "Rehabilitation Act") (collectively, the "ADA").[1] But beyond that, Plaintiff fails to allege the elements of any ADA claim in any cognizable fashion or otherwise identify the claims on which he is proceeding. The "shotgun pleading" nature of Plaintiff's Amended Complaint requires dismissal, and because Plaintiff has already had the opportunity to cure the deficiencies once, but failed to do so, the case should be dismissed with prejudice. If, however, this Court is inclined to give Plaintiff another opportunity to cure its pleading deficiencies, Defendant requests, in the alternative, that Plaintiff be compelled to file a more definite statement that sets forth the specific elements of each ADA claim being advanced and the facts on which Plaintiff intends to rely to support those facts.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Case is a federal government contractor. *See* ECF No. 24 ¶¶ 13, 17, 18. Effective June 1, 2021, Case began performing a federal contract (the "Contract") for Recruiter Administrative Services Support for the Army in Tupelo, Mississippi. *Id.* ¶¶ 8, 18-19. Plaintiff was previously employed on a part-time basis by Choctaw, which held the prior version of the Contract. *Id.* ¶¶

---

[1] Case collectively refers to the statutes as the "ADA," because "[t]he [Rehabilitation Act] and the ADA are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (internal citation omitted).

[2] For the purposes of this Motion only, Case accepts as true the well-pleaded factual allegations in Plaintiff's Amended Complaint.

{00173586 }  2

13, 17, 18, 22. On May 17, 2021, Case offered Plaintiff a position as a General Clerk II on the Contract, with a start date of June 1, 2021. *Id.* ¶¶ 8, 25.

General Clerk II part-time employees are required to work 30 hours per week under the Contract. *Id.* ¶ 29. Despite the Contract's requirements, Plaintiff, by his own admission, was unable to work 30 hours per week; he worked "four to four and a half hours a day." ECF No. 24 ¶¶ 30, 43 (he "worked about 4 hours a day. Sometimes a little more, sometimes a little less."). And, when asked if he could work more than that, Plaintiff did not respond in a way that indicated he could or was willing to. *Id.* ¶¶ 54-55 (when asked "if working closer to 30 hours was something Mr. Scharklet could do" Plaintiff responded by "expressing his disbelief that Defendant would not support a disabled veteran nor the ADA.").

Shortly after accepting the General Clerk II position, Plaintiff submitted documentation to his supervisors about his need for an ADA accommodation. *Id.* ¶¶ 44-45. Although the specifics of the accommodation request are not detailed in the Complaint, it can be inferred from the allegations that Plaintiff asked to continue to work approximately four hours per day. *Id.* ¶¶ 43, 47 (Plaintiff believed Case would approve the same accommodation he obtained from his prior employer). Essentially, the accommodation Plaintiff sought was daily time off work, on an indefinite basis. *Id.* ¶¶ 12, 28-30, 45.

On August 11, 2021, Plaintiff submitted a doctor's note that indicated Plaintiff may "need to leave the workplace to go home." *Id.* ¶ 49. Case then "open[ed] [a] 'dialogue with [Plaintiff],' to determine if 'terms for remaining on duty' were viable." *Id.* ¶¶ 50-56. As part of the dialogue between Case and Plaintiff, on August 19, 2021, Case informed Plaintiff that it could not accommodate him missing 1.5 hours of work per day because the Government would no longer permit it. *Id.* ¶ 51. Case asked Plaintiff "if he would be able to work the full 30 hours [per week]

and use sick time." *Id.* On August 24, 2021, Case emailed Plaintiff asking "if working closer to 30 hours was something [Plaintiff] could do." *Id.* ¶ 54. In response, Plaintiff attacked Case "expressing his disbelief that Defendant would not support a disabled veteran . . . ." *Id.* ¶ 55. That ended Case's participation in the parties' dialogue, and Plaintiff was terminated later that day. *Id.* ¶ 59.

Plaintiff filed this action against Case on December 13, 2022, alleging generalized violations of the ADA. *See generally* ECF No. 1. As this Court observed, Plaintiff's original complaint failed to set forth with any specificity "a discrete claim or claims (i.e. disability discrimination, retaliation, failure to accommodate, etc.)." ECF No. 23 at 6. Nevertheless, Case sought to interpret Plaintiff's garbled allegations against it as best it could and moved to dismiss the original complaint for failure to state a claim under the ADA, on the grounds that Plaintiff is not a "qualified individual," that his requested accommodation was unreasonable, and that he could not plead that Case failed to engage in the interactive process. ECF No. 6 at 6-13. As noted by the Court, Plaintiff's response memorandum focused on the elements of a failure-to-accommodate claim and argued that he was also bringing a retaliation claim, despite having only mentioned retaliation in his pleading only once, in passing. ECF No. 23 at 7-8. Both the Court and Case were unsure about what claims Plaintiff intended to bring. *Id.* at 8.

Given that Plaintiff's shotgun pleading strategy left the Court "in the precarious position of having to guess what claims Plaintiff attempt[ed] to bring," the Court found: (1) it would be "inappropriate to proceed" on assumptions, and (2) that Plaintiff's original complaint did "not contain sufficient information to allow a responsive pleading to be framed, nor [did it] allow the Court to rule on" Case's motion to dismiss. *Id.* at 8-9. Accordingly, the Court determined that the proper remedy was for Plaintiff to provide a more definite statement of his claims and amend his

pleadings to provide more specificity. *Id.* at 9.

In response to the Court's Order, Plaintiff filed the Amended Complaint, ECF No. 24, that failed to cure the deficiencies. In essence, the Court ordered Plaintiff to set forth a discrete claim (or claims) under the ADA, such as "disability discrimination, retaliation, or failure to accommodate." ECF No. 23 at 6, 10. Yet, in his Amended Complaint, Plaintiff broadly sketches out what appear to be very similar claims and labels each claim only by Roman numeral and not by the title of the purported cause of action. ECF No. 24 ¶¶ 79-112. What is more, Plaintiff fails to incorporate any of his factual allegations by reference into each of these claims or repeat factual allegations in language that would tie them to specific claim elements. *See generally id.* So, Case is again left to guess at the *specific* facts upon which his numbered claims are predicated and the specific causes of action represented by the numbered "Claims." *Id.*

### III. LEGAL STANDARDS

Rule 12(b)(6) motions test whether a claim has been adequately stated in the complaint. *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 220 (5th Cir. 1998). To do so, the Court must consider the pleading in the light of Rule 8, which provides that a plaintiff's complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Pursuant to Rule 8(a), a complaint is inadequate "if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Gen. Star Indem. Co. v. Vesta Life Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999) (citations omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, a plaintiff must plead sufficient facts to allow a court, "draw[ing] on its judicial experience and common sense[,]" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), to infer more than the "mere possibility of misconduct," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (citing *Iqbal*, 556 U.S. at 678). The pleaded facts must be sufficient "to nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) (citing *Twombly*, 550 U.S. at 547; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

Where a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response[,]" a defendant "may move for a more definite statement of a pleading." FED. R. CIV. P. 12(e). Such a motion "must point out the defects complained of and the details desired." *Id.* "If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." *Id.* Where a party has been given an opportunity to file a more definite statement, yet fails to cure the deficiency, a reviewing court may dismiss. *Kirk v. Ryan*, 138 F.3d 952, at *1 (5th Cir. 1998) (unpublished) (affirming trial court's dismissal of complaint with prejudice after ordering more definite statement and amended complaint did not resolve

deficiencies); *Hobbs v. Johnson & Johnson*, Case No. 6:22-cv-711-WWB-EJK, 2022 WL 3136890, at *2 (M.D. Fla. June 22, 2022) (quoting *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019)).

IV.     **ARGUMENT**

    A.     **Plaintiff Filed a Shotgun Amended Complaint Which Does Not Cure His Prior Pleading Deficiencies**

Plaintiff's disregard of this Court's Order to plead his discrete claims with more specificity again makes it exceedingly difficult for Case to discern what his causes of action may be. The Court has already given Plaintiff an opportunity to replead his claims clearly, and he has failed to do so. The Court should dismiss the Amended Complaint with prejudice for again running afoul of the "shotgun pleading" rule.

Shotgun pleadings are complaints "where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). "What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts **not tied to specific causes of action** such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Martinez v. Nueces Cnty., Tex.*, No. 2:13-CV-178, 2013 WL 6190519, at *4 (S.D. Tex. Nov. 26, 2013) (citation omitted) (emphasis added). Such a pleading forces a "trial court [to] sift out the irrelevancies, a task that can be quite onerous." *Strategic Income Fund*, 305 F.3d at 1295. Shotgun complaints, therefore, are subject to dismissal under Rule 12(b)(6). *Moore v. Miss. Gaming Comm'n*, No. 1:1500013, 2015 WL 13019615, at *5 (N.D. Miss. Nov. 2, 2015).

The Amended Complaint is a quintessential shotgun pleading. Plaintiff has failed to state clearly exactly *what* causes of action underlie each of his seven enumerated, unnamed claims. Case is again left to guess at Plaintiff's potential legal theories, much less *which* allegations

correlate to *which* legal theories. And, critically, the allegations in the numbered claims in the Amended Complaint are untethered to the elements of any ADA cause of action. The Court should dismiss the Amended Complaint with prejudice outright as a result.

    **1.    ADA Causes of Action**

There are a number of ADA-based causes of action that an aggrieved plaintiff may bring under the right circumstances, including, for instance, claims for disability discrimination, failure to accommodate, or retaliation. Each requires proof of certain elements.

A plaintiff advancing a disability discrimination claim must plausibly plead that he (1) is a disabled person within the meaning of the ADA; (2) is a qualified individual, *i.e.*, he is able to perform the essential functions of the job, with or without reasonable accommodation (which plaintiff must plausibly describe); and (3) was subjected to unlawful discrimination because of his disability. *See Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (citations omitted); *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021). For a failure-to-accommodate claim, a plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (quoting *Feist v. La., Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)). A plaintiff making an ADA retaliation claim must show that "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). It should go without saying that an ADA plaintiff must actually

plead the elements of the claims on which they intend to proceed. *C.f. Berry v. Univ. of Miss. Med. Ctr.*, Civil Action No. 3:22-cv-004-TSL-MTP, 2022 WL 1625164, at *2 (S.D. Miss. May 23, 2022) ("To state a claim for violation of the ADA, and hence the Rehabilitation Act, [a] plaintiff must plead and prove . . . [the] elements [of her claim] . . . .").

Plaintiff repeatedly raises the phrase "interactive process" in the Amended Complaint. *See generally* ECF No. 24. Notably, a failure to engage in the interactive process, after an accommodation is requested, is not a per se violation of the ADA. *See Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011). To that end, several circuits hold that the failure to engage in the interactive process is not an independent claim. *See, e.g., Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (stating that "failure to engage in a good faith interactive process is not an independent violation of the ADA"); *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (holding that "failure to engage in the interactive process does not give rise to an independent claim"). As the Fifth Circuit has observed, the "direction to . . . engage in an interactive process is not an end it itself—it is a means to the end of forging reasonable accommodations." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). The alleged failure to engage in the interactive process is potentially relevant to a disability discrimination claim or to a failure-to-accommodate claim. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014), thus the use of the phrase "interactive process" alone gives Defendant and the Court no indication about what claim is actually being pursued.

> 2. **Counts I through V and VII of Plaintiff's Amended Complaint Are Ambiguous as to the Claims They Intend to Advance**

Based on Plaintiff's Amended Complaint, it is unclear on which causes of action Plaintiff intends to proceed. There are either conflicting allegations that indicate different causes of action may be at issue in a single claim or other pleading deficiencies with regard to each count.

{00173586 }  9

Plaintiff's confusing pleading is further complicated by the fact that he does not name the causes of action on which he is proceeding, which is perhaps the simplest way to give Defendant and the Court notice of the claims at issue in this case. Nor does Plaintiff plead the elements of or facts to support the elements of any ADA claim. Defendant addresses each claim in turn.

In "Claim I," Plaintiff alleges:

> 79. Defendant knew it had an obligation to comply with the ADA and Rehabilitation Act, yet did not.
> 80. Defendant knew that USAREC had previously approved Mr. Scharklet's accommodation request, but did not submit his accommodation request to USAREC on Mr. Scharklet's behalf after taking over the USAREC contract.
> 81. Defendant knew that Mr. Scharklet was allowed to work a reduced schedule after USAREC previously approved Mr. Scharklet's accommodation request under the prior contractor, dispensing with concerns over meeting minimum hour requirements.
> 82. Defendant did not engage in the interactive process with Mr. Scharklet when he inquired about his accommodations when Defendant took over the USAREC contract.
> 83. Defendant violated Plaintiff's rights under the [ADA] and the Rehabilitation Act of 1973 when it discriminated against Mr. Scharklet by not submitting his request for accommodation to USAREC as requested in June 2021.

ECF No. 24 ¶¶ 79-83. A review of "Claim I" indicates that Plaintiff could be making either a failure-to-accommodate claim or a disability discrimination claim. For instance, in Paragraph 83, Plaintiff alleges that Defendant discriminated against Plaintiff, which is the third element of a disability discrimination claim. *Neely*, 735 F.3d at 245 (citations omitted); *Thompson,* 2 F.4th at 470. But he also claims that Defendant failed to engage in the interactive process. ECF No. 24 ¶ 82. The reliance on an alleged failure to engage in the interactive process, without tying it to a specific cause of action, is ambiguous, because it could be relevant to more than one cause of action. *See Scharklet v. Case Healthcare Sols., Inc.*, Civil Action No. 1:22-cv-193-SA-DAS, 2023 WL 4466447, at *4 (N.D. Miss. July 11, 2023) ("For example, the Complaint's [1] allegation that

Case failed to engage in an 'interactive process' could be relevant to a disability-discrimination claim or a failure-to-accommodate claim."). Meanwhile, Plaintiff fails to allege or plead that he is a "qualified individual," which is a mandatory element of both ADA causes of action. *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("[a]n ADA plaintiff bears the burden of proving [and at this stage, of adequately alleging,] that she is a 'qualified individual with a disability,'—that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job.") (quoting 42 U.S.C. § 12111(8)); *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) ("A qualified individual is one, 'who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" (citations omitted)). Indeed, Plaintiff does not explain the facts on which he intends to rely to suggest he can meet that element, and he does not incorporate by reference into Claim I any of the other facts pled in the Amended Complaint. *See generally* ECF No. 24 ¶¶ 79-83. Plaintiff alleges that a *different* employer approved a specific accommodation under a *different* federal contract, but he does not tie that allegation to any specific element of a cause of action. *Id.* Thus, it is unclear what cause of action Claim I represents or the facts underlying it.

Similarly, Claim II conflates disability discrimination and failure-to-accommodate claims. For instance, in Paragraph 93 of the Amended Complaint, Plaintiff alleges that "Defendant violated Plaintiff's rights" under the ADA "by discriminating against Mr. Sharklet [sic] when it terminated him without engaging in the interactive process to determine whether he could perform the essential functions of his job with or without accommodation . . . ." ECF No. 24 ¶ 93. That allegation appears to be making a disability discrimination claim related to Plaintiff's termination. *See Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (disability discrimination claim

involves claim that an adverse employment action was taken against an employee as a result of discrimination related to that employee's disability). But, again, it raises the interactive process without describing the specific cause of action to which it relates. *Scharklet*, 2023 WL 4466447, at *4. Claim II also fails to allege that Plaintiff is a qualified individual or which facts Plaintiff is using to support that element. *See generally* ECF No. 24 ¶¶ 84-93.

Claims III and IV appear somewhat more aligned with failure-to-accommodate claims. However, they, like the other causes of action, fail to allege that Plaintiff is a qualified individual and do not incorporate any facts by reference. *See generally id.* ¶¶ 94-103. And they also invoke disability discrimination claims: "Defendant violated Plaintiff's rights under the [ADA] by discriminating against Mr. Sharklet [sic]" "when it stated that its contract did not cover ADA as a reason for denying Plaintiff's requests for accommodation" and "when it refused to engage in the interactive process to determine whether Mr. Scharklet could perform the essential functions of his job without working the required minimum hours . . . ." *Id.* ¶¶ 98, 103. From the allegations, it remains ambiguous whether Plaintiff is raising a disability discrimination or failure-to-accommodate claim. *Scharklet*, 2023 WL 4466447, at *4.

Claim V suffers from the same conflicting theories of liability as the other claims. In Paragraph 106, Plaintiff confusingly claims that "Defendant violated Plaintiff's rights under the [ADA] by discriminating against Mr. Sharklet [sic] when it terminated him a day after Mr. Scharklet submitted a new accommodation request on August 24, 2021, without engaging in the interactive process." ECF No. 24 ¶ 106. Again, Plaintiff fails to allege that he is a qualified individual and does not incorporate any facts by reference. *See generally id.* ¶¶ 104-106. Claim V could be raising a disability discrimination claim, a failure-to-accommodate claim, or a retaliation claim. *See Scharklet*, 2023 WL 4466447, at *4 (reliance on interactive process language

was ambiguous as to whether Plaintiff was raising disability discrimination or failure-to-accommodate claim). Although it does not specifically use the term "retaliation," it appears Plaintiff is alleging that Defendant terminated Plaintiff as a result of Plaintiff submitting an accommodation request. ECF No. 24 ¶ 106. But, if that is the case, Plaintiff failed to allege any of the other elements of ADA retaliation. *See Feist*, 730 F.3d at 454 (reciting elements) (citations omitted).

With regard to Claim VII, it is unclear whether any claim is being raised at all, let alone what ADA claim Plaintiff intends to advance. Plaintiff does not allege any of the elements of any ADA cause of action other than a passing reference to "violations of Plaintiff's statutory rights" and Defendant's alleged failure to "consider Mr. Scharklet's requests for accommodation . . . ." ECF No. 24 ¶¶ 110-111. From context, it is possible that Plaintiff is attempting to make a claim for punitive damages. *See generally* ECF No. 24 ¶¶ 109-112. However, punitive damages are a remedy only, not an independent cause of action. *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988) ("Punitive damages are not an independent claim or cause of action, but are a remedy available in various causes of action.") (citations omitted). Thus, to the extent Plaintiff was attempting to allege an ADA-based cause of action in Claim VII, it is wholly unclear from the Amended Complaint what that cause of action may be, and Defendant is unable to respond.

### 3. Claim VI is More Clear, But it is Still Deficient

Claim VI more clearly sets forth an ADA retaliation claim; indeed, it even uses the term "retaliation." ECF No. 24 ¶ 108. However, it is unclear from the Amended Complaint whether Plaintiff exhausted his administrative remedies on this alleged retaliation claim before filing suit. Notably, plaintiffs must exhaust their administrative remedies by filing a charge with the EEOC as a precondition to suing in district court. *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862,

863-64 (5th Cir. 1983). "Failure to exhaust is grounds for dismissal." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018), *reh'g denied* (Feb. 20, 2018). ADA claims are proper in federal court only when they fall within the scope of the investigation which can reasonably be expected to grow out of the initial EEOC Charge of Discrimination. *Id*. Where a plaintiff does not check the correct box on the EEOC complaint form or otherwise disclose his retaliation claim—such as failing to describe even the general nature of a retaliation claim—dismissal is proper. *See Miller v. Sw. Bell Tel. Co.*, 51 F. App'x 928 (5th Cir. 2002); *Williams*, 717 F. App'x at 445); *Burns v. Nielsen*, 456 F. Supp. 3d 807, 843 (W.D. Tex. 2020) (finding failure to exhaust administrative remedies where plaintiff did not check retaliation box or provide narrative containing any description of retaliation).

Plaintiff included a copy of his charge of discrimination as an exhibit to the Amended Complaint. ECF No. 24-1. However, that charge of discrimination does not allege retaliation or even include the term retaliation anywhere on the form. *Id.* Thus, if this Court permits Plaintiff to file another amended complaint, it should order Plaintiff to alleged whether it has exhausted its administrative remedies on the retaliation claim through the attached charge or through some other charge.

      **B.**    **The Appropriate Remedy is Dismissal**

As noted above, this Court ordered Plaintiff to file a more definite statement, *i.e.*, the Amended Complaint, and to "set forth his claims with more specificity." ECF No. 23 at 9. But the same deficiencies from, and confusion arising out of, the original Complaint still exist after review of the Amended Complaint. It is a fairly simple task for Plaintiff to state, in the heading of each cause of action, which actual ADA-based cause of action he is advancing. But Plaintiff did not even do that. *See generally* ECF No. 24. Meanwhile, Plaintiff's numbered, but untitled,

"Claims" offer allegations that could be relevant under multiple causes of action (or, in some cases, no causes of action). Plaintiff also makes no effort to plead facts tied to the specific elements of any ADA cause of action. *See, e.g.*, *id.* ¶¶ 79-112 (failing to allege, as to any claim, that Plaintiff is a "qualified individual"). While Plaintiff's Amended Complaint uses a number of ADA "buzz words," Plaintiff fails to tie these buzz words to specific claims or to explain what causes of action he is bringing and what facts support those causes of action. Thus, like the original Complaint, Plaintiff's Amended Complaint "fail[s] to set forth discrete claims." ECF No. 23 at 8.

When a plaintiff is ordered to file a more definite statement, but the amended complaint fails to cure the identified deficiencies, dismissal with prejudice is appropriate. *Kirk*, 138 F.3d at *1 (affirming trial court's dismissal of complaint with prejudice after ordering more definite statement and amended complaint did not resolve deficiencies). Here, the Court's Order on Defendant's Motion to Dismiss set forth specific deficiencies in the original Complaint and clarifications required for the Amended Complaint. ECF No. 23 at 6-10. Plaintiff failed to cure those deficiencies. The matter should be dismissed as a result.

In the event the Court is inclined to give Plaintiff another opportunity to file a more definite statement, Defendant requests that the Court order Plaintiff to file a second amended complaint that sets forth (a) the title of the specific claim being advanced (*e.g.*, disability discrimination, failure-to-accommodate, retaliation, etc.); (b) the specific conduct giving rise to the alleged violation (*e.g.*, termination based on Plaintiff's request for an accommodation); (c) the elements of the specific claim being advanced; and (d) the factual basis on which Plaintiff relies to satisfy the pleading requirement for each element. In addition, Plaintiff should be compelled to plead whether he has exhausted his administrative remedies as to each of those causes of action. With that information, Defendant will be able to formulate a responsive pleading (either an answer or

motion to dismiss).[3]

## V. CONCLUSION

For the foregoing reasons, Case respectfully requests that the Court grant its Motion and dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice. Should the Court allow Plaintiff another opportunity to plead, Case respectfully asks that it condition any subsequent repleading on Plaintiff's payment of an award of Case's attorneys' fees incurred in responding to the Amended Complaint, and requiring Plaintiff to submit a redline showing the changes and edits to the Amended Complaint.

Respectfully submitted,

Dated: August 8, 2023

**CASE HEALTHCARE SOLUTIONS, INC.**

By Counsel:

/s/ Matthew E. Feinberg
Matthew E. Feinberg (admitted *pro hac vice*)
Mansitan Sow (admitted *pro hac vice*)
**PILIEROMAZZA, PLLC**
1001 G Street, N.W., Suite 1100
Washington, D.C. 20001
Ph: (202) 857-1000
mfeinberg@pilieromazza.com
msow@pilieromazza.com

S. Ray Hill, III
**Clayton O'Donnell, PLLC**
1403 Van Buren Ave., Suite 103
Post Office Box 676
Oxford, Mississippi 38655
Ph: 662-234-0900
rhill@claytonodonnell.com

---

[3] In the event the Court decides that Plaintiff's Amended Complaint sufficiently pleads an ADA-based cause of action, Defendant intends to file a motion to dismiss and requests that the Court provide Defendant with 21 days to file such motion to dismiss after ruling on the instant motion.

CERTIFICATE OF SERVICE

I, Matthew E. Feinberg, hereby certify that on this 8th day of August 2023, a true copy of the foregoing document was served on each party appearing pro se and on the attorney of record for each other party separately appearing by delivering a copy of the same via the United States District Court's online case filing system, CM/ECF, to:

Kristy Bennett, Esq.
Tressa V. Johnson, Esq.
Johnson & Bennett, PLLC
1407 Union Ave., Suite 807
Memphis, TN 38104

/s/ Matthew E. Feinberg
Matthew E. Feinberg, Esq.