IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTOPHER L. SCHARKLET, SR.                                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. 1:22-CV-193-SA-DAS

CASE HEALTHCARE SOLUTIONS, INC.                                          DEFENDANT

ORDER AND MEMORANDUM OPINION

On December 12, 2022, Christopher L. Scharklet, Sr. initiated this civil action by filing his

Complaint [1] against Case Healthcare Solutions, Inc. ("Case"). He filed his Amended Complaint

[24] on July 25, 2023. Before the Court is Case's Motion to Dismiss for Failure to State a Claim

or, in the Alternative, Motion for More Definite Statement [27]. The Motion [27] has been fully

briefed and is ripe for review.

*Relevant Factual and Procedural Background*[1]

Scharklet's Amended Complaint [24] alleges violations of the American with Disabilities

Act of 1990, ("ADA"), as amended, 42 U.S.C. § 12101 *et seq*, and the Rehabilitation Act of 1973,

29 U.S.C. § 701 *et seq*.

According to his Amended Complaint [24], Scharklet is a disabled veteran. He retired from

the U.S. Army in 2014 with a total disability determination. His disability is based on injuries to

his cervical and lumbar spine, which result in radiculopathy in both shoulders and lower

extremities; carpal tunnel of the left wrist; strain of the right wrist; surgical scars to the spine, as

well as other scarring; and major depressive disorder. His chronic pain syndrome and major

depressive disorder require daily treatments.

---

[1] Much of the factual recitation herein was set forth in the Court's previous Order and Memorandum
Opinion [23].

Scharklet alleges that he worked part-time as a General Clerk II at the U.S. Army Recruit Command Center ("USAREC") in Tupelo, Mississippi from November 24, 2014 until he was terminated on August 24, 2021. Workers at USAREC are employed by federal contractors that provide administrative services to USAREC facilities. Scharklet alleges that over the course of his employment as a General Clerk II, he worked for several different contractors but always performed the same duties. The contractors relevant to this case are Choctaw Defense Services ("Choctaw") and Case. Case took over the Recruiter Administrative Services Support ("RASS") Contract from Choctaw on June 1, 2021.

The Amended Complaint [24] alleges that the General Clerk II position "typically required a six-hour day for 30 hours a week." [24] at p. 5. While employed with Choctaw, Scharklet worked four to four and one-half hours per day. Scharklet avers that his ability to work reduced hours was a result of a written exchange between Choctaw and USAREC. Specifically, during the years that Choctaw held the contract, Choctaw received a letter of concern from USAREC regarding existing work hour adjustments. In response to USAREC's letter, Choctaw submitted accommodation requests for two employees, one of which was Scharklet. USAREC's Contracting Officer ("KO") responded to Choctaw's request with a "Revocation of Letter of Concern as a result of the approval of the disability accommodation requests." *Id*. In light of USAREC's response, Scharklet was allowed to work reduced hours. He did so throughout the duration of time that Choctaw held the contract.

Scharklet asserts that during the transition period from Choctaw to Case, he asked Case Program Manager Chris Voldarski[2] about "whether [he] needed to do anything regarding his

---

[2] For context, the Court notes that Scharklet reported to Voldarski and Assistant Program Manager William Culpepper while employed with Case. Both Voldarski and Culpepper worked at USAREC (presumably for Choctaw) before Case was awarded the contract. Scharklet reported to Voldarski under the prior contract as well.

2

accommodations during the transition to Case." *Id*. No facts are provided regarding what response, if any, Voldarski provided.

The remainder of the Amended Complaint [24] describes a detailed series of emails between Case and the U.S. Army leading up to Scharklet's termination. The email exchange was originally initiated for the purpose of requesting telework exceptions for employees with medical conditions. The telework requests did not include Scharklet because he did not request telework.

In short, the U.S. Army denied Case's telework requests, and the conversation stemming from that denial referred to the telework requests as requests for ADA accommodations. On June 15, 2021, U.S. Army representative Melody Price emailed Case President Harriet Jackson-Soumah and asserted that they were discussing two different issues: telework exceptions and ADA accommodations. With respect to ADA accommodations, Price stated: "I suggest you work with your attorney to make sure your [sic] in compliance with the rules and regulations for those asking for these accommodations." *Id*. at p. 6.

Jackson-Soumah forwarded Price's email to Voldarski and asked him for information on previous ADA approvals. Voldarski's June 16 response explained the above-referenced exchange between USAREC and Choctaw that ended in the KO sending a Revocation of Letter of Concern. Voldarski's email attached the Revocation of Letter of Concern and further stated that "[w]e tracked hours worked for the remainder of the [Choctaw] contract. At the time, there were no deductions for LWOP [(Leave Without Pay)]. The employee worked about 4 hours a day. Sometimes a little more, sometimes a little less." *Id*. at 7.

Several days earlier, on June 13, 2021, Case Assistant Program Manager William Culpepper emailed Scharklet and requested a doctor's note or letter documenting his conditions that required ADA accommodations. In response, Scharklet sent Culpepper a VA Disability Rating

Extract. Later, on August 11, 2021, Scharklet sent Culpepper a letter from one of his treating doctors explaining his disabilities, the treatments, and why he may need to leave work early.

Scharklet asserts that Case never asked him to submit additional information regarding his accommodations. According to the Amended Complaint [24], Scharklet believed the previous accommodations approved by USAREC would be in place for the Case contract as well.

The Amended Complaint [24] alleges that "[i]n July or early August, Jackson-Soumah was communicating with JoDeen Cuffe, U.S. Army Contracting Command [and KO], regarding Case not meeting the requirements of its contract with USAREC." *Id.* at p. 8. This section of the Amended Complaint [24] does not explicitly state what contractual requirements Case was not fulfilling. However, under "Claim III," the Amended Complaint states that Case "used its overall deficiencies *in meeting minimum hour requirements* under the USAREC as pretext for terminating Scharklet because of his disabilities." [24] at p. 14 (emphasis added).

On August 19, 2021, Cuffe and Jackson-Soumah's emails related to a conversation they had regarding Voldarski "opening 'dialogue with the employee in question,' to determine if 'terms for remaining on duty' were viable." *Id.* On the same day, Culpepper emailed Case's Vice President Michelle Peebles confirming that he advised Scharklet of the following:

> [I] informed him that if he continued to miss 1.5 hours everyday that he would be terminated. I told him that ADA is not in this contract and the Government will not allow him to continue to miss. When I asked him if he would be able to work the full 30 hours and use sick time he has earned he simply stated that he wanted this information in writing. I told him that the writing will be a termination letter if he does not work the required hours[.]

*Id.*

In response, Jackson-Soumah stated: "We gave him the verbal courtesy, if he misses any more time from work he will be terminated." *Id.* at p. 11.

On August 24, 2021, Culpepper emailed Scharklet and advised that if he wanted to stay employed at Case, he would be required to work more hours. Scharklet responded to Culpepper's email with disbelief that Case would not support a disabled veteran and the ADA accommodations that he had been receiving for the previous seven years. To his email, Scharklet attached the letter from his doctor and statements from past Commanding Officers stating that he performed all tasks required of him while working a reduced schedule.[3] Scharklet asked that the attachments be considered before he was terminated. Approximately half an hour later, Culpepper responded to Scharklet and terminated him.

In the Amended Complaint [24], Scharklet alleges that Case terminated him "for requesting accommodations" and "for his disabilities without regard to whether [he] could perform the essential functions of his job." *Id*. at p. 10, 12. He asserts that Case did not ask about his essential job functions, provide him a list of essential job functions, engage in the interactive process, or consider his USAREC superiors' statements that he could perform the essential functions of the job while working a reduced schedule. Scharklet further emphasizes that he received high marks on his performance reviews. He alleges that "[Case's] knowledge that the minimum hour requirement could be accommodated should have put it on notice that the hour requirement was not essential to the performance of [his] job." *Id*. Finally, Scharklet asserts that Case terminated him "despite knowing that the minimum hour requirement could be accommodated." *Id*.

As noted above, Scharklet initially filed his Complaint [1] on December 12, 2022. On February 27, 2023, Case filed a Motion to Dismiss for Failure to State a Claim [5]. Upon a careful review of the Complaint [1], the Court determined that it did not "contain sufficient information

---

[3] The Amended Complaint [24] includes some of the statements from the past Commanding Officers. In short, Captain Daniel A. Ables stated that Scharklet's reduced hours had no impact on the mission or effectiveness of the office. *See* [24] at p. 10. Captain Joshua L. McFarland stated that Scharklet was "easily the most effective Unit Administrator in the Baton Rouge Battalion." *Id*. at p. 11.

to allow a responsive pleading to be framed, [or] to allow the Court to rule on the [] Motion to Dismiss [5]." [23] at p. 9. In particular, there were no claims specifically named in the Complaint [1], the facts were not tied to elements of any discrete ADA claim, and the Response in Opposition [12] to Case's Motion [5] confused the issue by analyzing a mix of claims that were not clearly set forth in the Complaint [1]. As such, the Court denied Case's Motion [5] *without prejudice* and ordered Scharklet to amend his Complaint [1] to "set forth his claims with more specificity." *Id.*

Thereafter, on July 25, 2023, Scharklet filed his Amended Complaint [24]. Case subsequently filed the instant Motion to Dismiss for Failure to State a Claim [27], arguing that the Amended Complaint [24] did not remedy any of the original Complaint's [1] deficiencies. Scharklet opposes the Motion [27].

*Legal Standard*

The purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of the statement for relief. *Wheeler v. Williams*, 2018 WL 6204444, at *3 (N.D. Miss. Nov. 27, 2018) (citing *Murray v. Amoco Oil Co.*, 539 F.2d 1385 (5th Cir. 1976)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

In deciding a Rule 12(b)(6) motion, the Court must accept "all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*,

675 F.3d 849, 854 (5th Cir. 2012) (en banc)). A legally sufficient complaint need not contain detailed factual allegations, but it must set forth more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. "If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed." *Wheeler*, 2018 WL 6204444 at *3 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).

*Analysis and Discussion*

As noted, Case alleges that Scharklet's Amended Complaint [24] did not remedy the original Complaint's [1] deficiencies. The Amended Complaint [24] lists seven "claims." Each claim is labeled with roman numerals (i.e., "Claim I," "Claim II," etc.), rather than the name of a discrete cause of action. Case argues that the Amended Complaint [24] is a shotgun pleading that fails to match the elements of any discrete ADA claim to their factual predicates. However, there are two exceptions to Case's argument. First, Case asserts that Claim VI is clearer and appears to be a retaliation claim. Second, Case asserts that Claim VII appears to be a claim for punitive damages. The Court will address Case's arguments as to Claims VI and VII before turning to its general shotgun pleading argument.

I.      *Claim VI and Claim VII*

First, Case asserts that Claim VI sets forth a claim for retaliation. The Court agrees that Claim VI appears to be a retaliation claim, as it alleges that Scharklet's request for accommodation was a protected activity and that Case retaliated against him by terminating him the day following his request. *See* [24] at p. 17; *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (noting that to establish prima facie case of retaliation under the ADA, the plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3)

7

there is a causal connection between the two). Moreover, in his Response Memorandum [32], Scharklet does not dispute this characterization of his claim.

However, Case asserts that Scharklet's retaliation claim should be dismissed for failure to exhaust his administrative remedies. Both the ADA and the Rehabilitation Act require a plaintiff to exhaust his administrative remedies prior to filing suit in federal court. *Lowe v. Am. Eurocopter, LLC*, 2010 WL 5232523, at *2 (N.D. Miss. Dec. 16, 2010) ("The exhaustion requirements of Title VII also apply to the claims raised under the ADA and the Rehabilitation Act.") (citing 42 U.S.C. § 12117(a); 29 U.S.C. § 794(d); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981)). To exhaust administrative remedies, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") and receive a right-to-sue letter. *See Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) (citing *Dao*, 96 F.3d at 789) (ADA); *Pacheo v. Mineta*, 448 F.3d 783, 788 n. 6 (5th Cir. 2006) (Rehabilitation Act; private sector employees file their administrative charge with the EEOC).

In determining whether a plaintiff has administratively exhausted a particular claim, "the scope of an EEOC complaint should be construed liberally." *Patton v. Jacobs Engineering Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheo*, 448 F.3d at 788). Administrative charges should be construed in the "broadest reasonable sense" particularly because they are "rarely drawn by an attorney." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463, 467 (5th Cir. 1970). Still, "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Patton*, 874 F.3d at 443 (quoting *Pacheo*, 448 F.3d at 788-89). "To balance these considerations, '[courts in the Fifth Circuit] interpret[] what is properly embraced in review of a Title-VII claim

8

somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination."'" *Id.* (quoting *Pacheo*, 448 F.3d at 789). This involves a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, [looking] slightly beyond its four corners, to its substance rather than its label." *Id.* (quoting *Pacheo*, 448 F.3d at 789).

Though unpublished, the case of *Williams v. Tarrant County College District*, 717 F. App'x 440 (5th Cir. 2017) is analogous to the case *sub judice*. In *Williams*, on her EEOC charge, the plaintiff marked the boxes for discrimination based on age and disability, though she asserted a claim for retaliation when she filed suit under the ADA. *Id.* at 445. In the narrative section of her charge, she wrote: "I was denied reasonable accommodations on 01-02-13 by Ricardo Coronado and Sharion Marshall, in a meeting, after I provided them with a doctor's note regarding this. I was subsequently terminated on 01-07-13, by Ricardo Coronado." *Id.* Arguing that the plaintiff had not exhausted her administrative remedies as to her retaliation claim, the defendant asserted that she "neither checked the box for retaliation, nor claimed retaliation in the narrative section of her administrative charge; and [that] her charge does not indicate that she was engaged in a protected activity, such as asking for reasonable accommodations, so an investigation into retaliation would not reasonably follow." *Id.*

In considering the defendant's argument, the Fifth Circuit noted that "our court does not require a 'plaintiff [to] check a certain box or recite a specific incantation to exhaust,' . . . and will not cut off [a party's rights] merely because [s]he fails to articulate correctly the legal conclusion emanating from h[er] factual allegations[.]" *Id.* (citing *Pacheo*, 448 F.3d at 792; *Sanchez*, 431 F.2d at 467). Failure to fill in the appropriate box will warrant dismissal "only when 'coupled with the inability to describe the general nature of the claim in the narrative section of the charge.'" *Id.*

(quoting *Miller v. Sw. Bell. Tel. Co.*, 51 F. App'x 928, at *7 (5th Cir. 2002)). Accordingly, the Fifth Circuit held as follows:

> Despite Williams' failure to check the retaliation box, or otherwise include the word "retaliation" in her charge, it was sufficient to exhaust her retaliation claim. She stated she: (1) provided her employer with a doctor's note regarding reasonable accommodations; (2) was denied reasonable accommodations; and (3) was terminated thereafter. The "[administrative] investigation which can reasonably be expected to grow out of" Williams' charge would examine whether she was engaged in a protected activity— seeking reasonable accommodations—and whether she was terminated as a result.

*Id.* at 445-46 (citing *Robles v. Tex. Tech Univ. Health Scis. Ctr.*, 131 F. Supp. 3d 616, 632 (W.D. Tex. 2015)).

Here, Case argues that Scharklet's retaliation claim should be dismissed because he did not check the appropriate box or use the word "retaliation" in his EEOC charge. Case is correct that Scharklet's EEOC charge does not specifically check a box labeled "retaliation" or use the word "retaliation." However, the Court notes that there are no boxes to select. Instead, in a blank space labeled "Discrimination Based On," the word "disability" is typed in. *See* [24], Ex. 1 at p. 1. If the charge documents contained additional pages with boxes to select, the Court has not been provided a copy of them.

Nevertheless, while Scharklet failed to name his retaliation claim on his EEOC charge, dismissal is not warranted unless he additionally failed to describe the general nature of his retaliation claim. *See Williams*, 717 F. App'x at 445. The narrative section of Scharklet's EEOC charge reads as follows:

> On June 1, 2021 I was hired by the above-named Respondent as an Admin Clerk 2. On June 15 2021 I presented William Culpepper, Assistant Project Manager, with my disability letter and my doctors [sic] note on August 11, 2021. Respondent rescinded my reasonable accommodation that previous contracted companies had honored.

10

> The previous reasonable accommodations were approved by Chris
> Voldarski, Main Project Manager. On August 24, 2021, I was
> discharged by William Culpepper for not being able to work the
> hourly requirement each week, because of my disability. I believe
> was discriminated against because of my disability, in violation of
> the American with Disabilities Act Amendments Act of 2008
> (ADAAA).

[24], Ex. 1 at p. 2.

These facts are very similar to the facts alleged in *Williams*. Scharklet alleges that he (1) provided a doctor's note and proof of disability; (2) Case did not provide the accommodation that was in place under previous contractors; and (3) he was terminated. Two weeks passed between him providing the doctor's note and his final termination.

Case argues that the charge includes no factual allegations involving a protected activity. Construing the charge in the "broadest reasonable sense," the Court disagrees. *Sanchez*, 431 F.2d at 467. Scharklet alleges that he had a reasonable accommodation in place under the "previous[ly] contracted companies." [24], Ex. 1 at p. 2. It is reasonable to construe his submission of a disability letter and doctor's note as an allegation that he was requesting the same accommodations from the new contractor. The next sentence's reference to a recission of his accommodation further supports the assumption that he submitted the documentation for the purpose of receiving an accommodation. In the Court's view, like in *Williams*, an investigation growing out of this charge would examine whether Scharklet engaged in a protected activity—requesting reasonable accommodation by sending a doctor's note and disability letter—and whether he was terminated as a result. Therefore, the Court finds that Scharklet sufficiently exhausted his administrative remedies as to Claim VI—his retaliation claim.

This brings the Court to Case's argument regarding Claim VII. In his Response Memorandum [32], Scharklet does not address or dispute Case's assertion that Claim VII is a claim

for punitive damages to which he is not entitled. This Court has time and again held that a plaintiff's "failure to respond amounts to an abandonment of the claims." *Johnson v. Univ. of Miss.*, 2022 WL 164545, at \*5 (N.D. Miss. Jan. 18, 2022) (citing *City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012)); *see also Scott v. Spencer Gifts, LLC*, 2015 WL 4205242, at \*1 (N.D. Miss. July 10, 2015) ("In their response, Plaintiffs have made no argument and offered no proof in support of their claims of intentional infliction of emotional distress and failure to train or supervise, and thus the Court finds these theories to be abandoned."); *Sanders v. Sailormen, Inc.*, 2012 WL 663021, at \*3 (S.D. Miss. Feb. 28, 2012) (collecting cases). Consistent with these authorities, Claim VII—an apparent claim for punitive damages—is hereby dismissed as abandoned.

With these two arguments resolved, the Court turns to Case's general argument that the Amended Complaint [24] should be dismissed as a shotgun pleading.

## II.     *Shotgun Pleading*

"As a general matter, '[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Moore v. Miss. Gaming Comm'n*, 2015 WL 13019615, at \*5 (N.D. Miss. Nov. 2, 2015) (quoting FED. R. CIV. P. 8(a)(2)). "[Rule 8] requires that a plaintiff plead sufficient facts to provide notice to [a defendant] of the factual basis for the plaintiff's claims." *Alexander v. Hall*, 2021 WL 800840, at \*3 (N.D. Miss. Mar. 2, 2021) (citing *EPCO Carbon Dioxide Prods, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)) (internal quotation marks omitted). "Shotgun pleadings violate the notice pleading standard 'by failing to one degree or another to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Id*. (citing *Vibe Micro, Inc., v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386,

392-93 (6th Cir. 2020); *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015)). "What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending them is significantly impaired." *Moore*, 2015 WL 13019615 at *5 (citing *Martinez v. Nueces Cnty., Tex.*, 2013 WL 6190519, at *4 (S.D. Tex. Nov. 26, 2013)); *see also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (identifying four "rough categories" of shotgun pleadings, noting that their "unifying characteristic" is the failure to give defendants notice of the claims against them and the grounds upon which the claims rest). "Consequently, shotgun complaints are subject to dismissal under Rule 12(b)(6)." *Moore*, 2015 WL 13019615 at *5 (citing *Taylor v. Hartford Fire Ins. Co.*, 748 F.3d 1147, 1126-27 (11th Cir. 2014)).

As noted, the Amended Complaint [24] lists seven unnamed "claims" labeled with only roman numerals. In its Motion [27], Case argues:

> Plaintiff has failed to state clearly exactly *what* causes of action underlie each of his seven enumerated, unnamed claims. Case is again left to guess at Plaintiff's potential legal theories, much less *which* allegations correlate to *which* legal theories. And, critically, the allegations in the numbered claims in the Amended Complaint are untethered to the elements of any ADA cause of action.

[28] at p. 7-8 (emphasis in original).

In his Response [31], Scharklet asserts that "he separated out well-pled causes of action for discrimination, failure to accommodate, and retaliation via 7 separate claims. Such specificity is far from a shotgun complaint, rather individual facts support each of Plaintiff's statutory claims." [32] at p. 2.

The Court agrees that the Amended Complaint [24] presents the same issues as a shotgun pleading in that it fails to give Case adequate notice of the claims Scharklet is advancing and the

13

facts underlying those claims. Again, a shotgun complaint is characterized by the "inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending them is significantly impaired." *Moore*, 2015 WL 13019615 at *5 (citation omitted). This usually occurs where a complaint *does* name a particular cause of action but then incorporates all preceding facts by reference, making it impossible to determine which of those facts support the named cause of action. *See Weiland*, 792 F.3d at 1321-22 (emphasis added). Here, the biggest obstacle to interpreting the Amended Complaint [24] is Scharklet's failure to specifically name any cause of action in the first place.

The Court is cognizant that a plaintiff need not perfectly state the legal theory of his claims. *See Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 & n.11 (5th Cir. 2015) (per curiam) ("A complaint need not cite a specific statutory provision or articulate a perfect 'statement of the legal theory supporting the claim asserted.'") (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 190 L. Ed. 2d 309) (2014)); *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) ("Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."). And here, one may arguably infer the legal theories the Amended Complaint [24] advances. The problem, however, is that it is not clear *which* legal theory corresponds to each unnamed claim; there are more claims (seven) than there are legal theories that may be inferred (three);[4] and the lack of clarity as to the legal theories advanced by each claim necessarily lends itself to a lack of clarity as to which facts support which legal theory.

For example, under Claim II, the Amended Complaint [24] alleges that "Defendant used its overall deficiencies in meeting minimum hour requirements under the USAREC as a pretext

---

[4] The Court notes that this issue persists despite the fact that Claim VI and Claim VII were identified above. Even excluding those claims, the Court is left with two presumptive legal theories (disability discrimination and failure to accommodate) and five unnamed claims.

for terminating Mr. Scharklet because of his disabilities." [24] at p. 14. The final paragraph under Claim II asserts that Case discriminated against Scharklet when it terminated him without engaging in the interactive process. *Id*. at p. 15. These references to pretext, discrimination, and termination without engaging in the interactive process indicate that Claim II may be a disability discrimination claim. However, Claim III utilizes the same "buzz words." Thus, even if the Court infers that disability discrimination is the cause of action at issue, it remains unclear whether the facts alleged under Claim II or Claim III support that cause of action. Moreover, if only Claim II is intended to be a disability discrimination claim, what cause of action does Claim III bring? Are they to be viewed together as supporting one cause of action, or are they alternative theories of liability as to the same cause of action? The allegations are simply unclear.

The failure to specifically name discrete causes of action also presents a problem where the particular legal theory intended by an unnamed claim *cannot* be so easily inferred. For example, the Court is unsure of the causes of action intended by Claim I, Claim IV, Claim V. Under Claim I, Scharklet asserts that Case knew it had an obligation to comply with the ADA, knew that USAREC previously approved his accommodation, did not submit his new accommodation request, and did not engage in the interactive process when he inquired about his accommodations. Claim I concludes with the allegation that Case "discriminated against Mr. Scharklet by not submitting his request for accommodation to USAREC as requested in June 2021." [24] at p. 13. The Court assumes that this is a failure to accommodate claim because it emphasizes the lack of consideration as to Scharklet's request for accommodation. However, because it does not mirror the elements of that cause of action, and because there are more unnamed claims listed than there are apparent causes of action, the Court is unsure of whether this claim should be viewed in

conjunction with other claims in support of one cause of action. Again, the allegations are simply unclear.

Additionally, as Case points out, Scharklet frequently alleges that Case failed to engage in the interactive process, but that element is relevant to both a failure to accommodate and a disability discrimination claim. *See E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 703 n. 6 (5th Cir. 2014) (while a failure to accommodate claim is distinct from a discriminatory termination claim, the question of whether an employer engaged in the interactive process is relevant to the qualification element of either analysis). Thus, the use of that "buzz word" does not assist in identifying the intended claims.

Case additionally emphasizes that Scharklet never alleges that he is a qualified individual, which is again relevant to both a failure to accommodate and a disability discrimination claim. "A plaintiff can establish that he is qualified by showing that either (1) he could perform the essential functions of his job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of his job." *Thomas v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (citation omitted). Some allegations in the Amended Complaint [24] suggest that the minimum hours requirement was not an essential function of the job. *See* [24] at p. 14. This would imply that Scharklet was qualified for the job because he could perform the essential functions of his job—the hours requirement (a non-essential function) would be irrelevant. On the other hand, most allegations of the Amended Complaint [24] suggest that the minimum hours requirement could be accommodated (and is therefore an essential function). *See* [24] at p. 10, 12, 16. This would imply that Scharklet is a qualified individual because he can perform the essential functions of his job with the reasonable accommodation of

16

reduced hours. This contradiction makes it even more difficult to determine the factual basis for the unnamed claims.

Given these deficiencies, the Court finds that the Amended Complaint [24] runs afoul of Rule 8 by failing to give Case notice of the claims against it and the facts that support those claims. "When a court dismisses a complaint on the basis of a failure to comply with Rule 8, it is generally appropriate to provide the plaintiff an opportunity to remedy the pleading deficiencies through the filing of an amended complaint." *Moore*, 2015 WL 13019615 at *6; *see also Williams v. 1960 Fam. Prac. PA*, 2020 WL 4227592, at *3 (S.D. Tex. June 29, 2020), *report and recommendation adopted*, 2020 WL 4227531 (S.D. Tex. July 21, 2020) ("When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, 'district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies. . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.'") (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F. 3d 305, 329 (5th Cir. 2002)).

Because the Court has previously given Scharklet the opportunity to amend his original Complaint [1], Case asserts that the Amended Complaint [24] should be dismissed *with prejudice* because it did not cure the first Complaint's [1] deficiencies. Alternatively, Case's Motion [27] asks for a more definite statement. Case requests that the Court order Scharklet to file an amended complaint setting forth (1) the title of the specific claims advanced; (2) the specific conduct giving rise to the alleged violations; (3) the elements of the specific claim being advanced; and (4) the factual basis on which he relies to satisfy the pleading requirement of each element. *See* [28] at p. 15.

The Court appreciates that it has already provided Scharklet an opportunity to amend his Complaint [1]. However, "[m]otions to dismiss are disfavored and rarely granted." *Wiley v. Dep't. of Energy*, 2021 WL 3809110, at *2 (E.D. La. Aug. 26, 2021) (citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)). As noted above, using a common-sense, contextual consideration of the allegations, the Court could infer the particular claims Scharklet attempts to bring. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 ("Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). This inference is based on: (1) Scharklet's general allegations that he had accommodations for a disability, but those accommodations are no longer permissible, and he has been terminated; and (2) his use of "buzz words" specific to three commonly asserted ADA claims. However, the specific factual support relevant to each claim is unclear to the Court.  The Court is hesitant to dismiss the Amended Complaint [24] when it appears that Scharklet could state a plausible claim but has not pled his best case. *See Valdez v. City of San Antonio*, 2022 WL 1608016, at *13 (W.D. Tex. May 20, 2022) (denying leave to amend a third time where plaintiff had pled his best case); *1960 Fam. Prac. PA*, 2020 WL 4227592, at *3 (denying leave to amend where "nothing in any of [the plaintiff's] submissions suggests that [he] could, if allowed to further amend, state a plausible claim"). Therefore, the Court denies Case's request for dismissal but grants its alternative request for a more definite statement.

Scharklet is ordered to file a second amended complaint clearly alleging: (1) the specific title of each claim alleged; (2) the elements of each claim; and (3) the alleged factual support for each element of each claim. To be clear, if Scharklet intends to bring three claims, there should be three claims listed in the complaint. The nature of each claim and its factual predicates should be

abundantly clear and comply with the notice requirements of Rule 8. The Court will dismiss the case if Scharklet fails to comply with the Court's instructions.

*Conclusion*

For the reasons set forth above, Case's Motion [27] is GRANTED IN PART and DENIED IN PART. To the extent Scharklet asserts a claim for punitive damages, the claim is DISMISSED *with prejudice*.

To the extent Case's Motion [27] seeks dismissal of the Amended Complaint [24], it is DENIED *without prejudice*. Case may re-urge its arguments if Scharklet files a second amended complaint.

The Motion's [27] alternative request for a more definite statement is GRANTED. Scharklet is hereby ORDERED to file a second amended complaint within fourteen (14) days of the date of this Order. Scharklet is hereby specifically warned that his failure to timely file an amended complaint or his failure to strictly comply with the directives set forth in this Order will result in the *sua sponte* dismissal of his case.

SO ORDERED, this the 29th day of November, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE